## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release (the "Agreement") is made between GRISELDA PERALES and FIDEL LOPEZ aka FIDEL LOPEZ JUAREZ, (hereinafter collectively and individually referred to as ("Plaintiffs" or "First Parties", a term which includes First Parties' successors, assigns, beneficiaries, personal representatives, and heirs), and SCARFONE'S OF WILTON MANORS, INC., a Florida for-profit corporation; THE PIZZA AND PASTA FACTORY, INC. d/b/a SCARFONE'S COAL FIRED PIZZA; BIG ROOSTER'S SOUTHERN TABLE, LLC, a limited liability company, DANIEL SCARFONE, DANIEL SCARFONE, JR., and ANGELA RUTH SPEROS(hereinafter collectively, individually, and jointly and severally, referred to as "Second Parties", a term which includes Second Parties' officers, directors, shareholders, members, attorneys, principals, agents, servants, representatives, employees, insurers, subsidiaries, affiliates, parent companies, predecessors and successors in interest, divisions, heirs, executors, administrators and assigns). Wherever used herein, a pronoun in the masculine gender shall be considered as including the feminine gender unless the context clearly indicates otherwise, and vice versa. First Parties and Second Parties may collectively be referred to as "Parties".

WHEREAS:

A. On January 9, 2017, the Plaintiffs filed a lawsuit against Second Parties in the United States District Court, Southern District of Florida, styled GRISELDA PERALES and FIDEL LOPEZ v. SCARFONE'S OF WILTON MANORS, INC., a Florida for-profit corporation; THE PIZZA AND PASTA FACTORY, INC. d/b/a SCARFONE'S COAL FIRED PIZZA; BIG ROOSTER'S SOUTHERN TABLE, LLC, a limited liability company; DANIEL SCARFONE, DANIEL SCARFONE, JR. and ANGELA RUTH SPEROS. An amended complaint was filed by Plaintiffs against SCARFONE'S OF WILTON MANORS, INC., a Florida for-profit corporation; THE PIZZA AND PASTA FACTORY, INC. d/b/a SCARFONE'S COAL FIRED PIZZA; BIG ROOSTER'S SOUTHERN TABLE, LLC, a limited liability company; DANIEL SCARFONE (hereinafter referred to as "Defendants"). Case No.: 17-60051-civ-Zloch, (the "Civil Action").

B. The First Parties claim that they are entitled to but did not receive from the Second Parties certain compensation allegedly owed to them including compensation pursuant to the Fair Labor Standards Act of 1938, ("FLSA") as amended (the "Alleged Compensation Amount").

C. The Second Parties dispute and deny that the First Parties are entitled to receive the Alleged Compensation Amount or any part thereof and claim that First Parties have been paid all wages due to them by Second Parties and/or otherwise not covered under the FLSA.

D. There are bona fide disputes between the Second Parties and the First Parties as to whether the First Parties are entitled to receive the Alleged Compensation Amount or any part thereof.

1370347v2 997370.0001

F.J                                                                                         G.P

E.  The Parties acknowledge that through their respective attorneys, they have been negotiating the terms of this agreement, have exchanged some discovery and have engaged in numerous settlement discussions prior to reaching the terms set forth in the Settlement Agreement.

F.  The Second Parties deny each and every material allegation set forth in the Civil Action, and deny having committed any wrong or causing any injury to the Plaintiffs.

G.  First Parties agree and acknowledge that ANGELA RUTH SPEROS and DANIEL SCARFONE, JR have vigorously asserted they have never been employers of First Parties pursuant to the Fair Labor Standards Act of 1938 ("FLSA") as amended and under any other claims in the Civil Action.

H.  In order to avoid the further costs and burdens of litigation, the Parties now desire to settle fully and finally any and all differences between them, including, but not limited to, those differences embodied in the Civil Action.

NOW, THEREFORE, the Second Parties and the First Parties incorporate the above listed recitals and agree as follows:

1.  For and in consideration of the promises outlined in Paragraph 2 of this Agreement and other good consideration, and upon delivery of the consideration set forth in Paragraph 2, First Parties agree as follows:

A.  To settle all of the claims and actions between First Parties and Second Parties which are the subject matter of the Civil Action, and release and forever discharge Second Parties from all and any manner of actions, causes of actions, suits, rights to attorney fees, debts, claims and demands whatsoever in law or equity by reason of any matter, cause or thing whatsoever, by reason of any claims or actions for overtime or any other alleged violations of the Fair Labor Standards Act for unpaid overtime and unpaid minimum wage, and of Article X, §24, Florida Constitution (Florida Minimum Wage Amendment), which are the subject matter of the Civil Action.

B.  To settle all claims herein, and hereby *release and forever discharge* the Second Parties and the Second Parties' parent companies, subsidiaries, divisions, predecessors, successors, heirs, executors, administrators, assigns, shareholders (direct or indirect), directors, officers, employees, agents, and attorneys (and the shareholders directors, officers, employees, agents, and attorneys of such parent companies or subsidiaries, including but not limited to The Pizza and Pasta Factory, Inc. d/b/a Big Rooster's Southern Skillet; The Pizza and Pasta Factory, Inc. d/b/a Exquisite Events & Catering, and The Pizza and Pasta Factory, Inc. d/b/a Premier Events and Catering), from all actions, causes of action, debts, sums of money, accounts, covenants, contracts, agreements, promises, damages, judgments, claims, and demands whatsoever, *whether known or unknown*, either in law or equity, whether statutory or common law, whether federal, state, local, or otherwise, including, but not limited to, any claims related to, or arising out of any aspect of the First Parties'

1370347v2 997370.0001

relationships with the Second Parties, any agreement concerning such relationship, or the termination of such relationship, including, but not limited to:

  (i) any and all claims asserted, or which could have been asserted, in the Civil Action, including, but not limited to, any and all claims under the Fair Labor Standards Act of 1938, as amended;

  (ii) any and all claims of wrongful discharge or breach of contract, any and all claims for equitable estoppel, any and all claims for employee benefits, including, but not limited to, any and all claims under the Employee Retirement Income Security Act of 1974, as amended, and any and all claims of employment discrimination on any basis, including, but not limited to, any and all claims under Title VII of the Civil Rights Act of 1964, as amended, under the Age Discrimination in Employment Act of 1967, as amended (the "ADEA"), under the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended, under the Civil Rights Act of 1991, as amended, under the Americans with Disabilities Act of 1990, as amended, under the Immigration Reform and Control Act of 1986, as amended, under the Family and Medical Leave Act of 1993, as amended, under the Florida Civil Rights Act of 1992, as amended, under the Florida Equal Pay Law, as amended, under the Florida Wage Discrimination Law, as amended, and under the Florida Minimum Wage Law, and the Older Workers' Benefit Protection Act.

  (iii) any and all claims under any other federal, state, or local wage and hour law, employment law, labor law, civil rights law, human rights law, or workers' compensation law and all other statutory and common law causes of action relating in any way to First Parties' employment or separation from employment with Second Parties, or otherwise, and whether such claims are now known or unknown to First Parties, from the beginning of the world to the effective date of this Agreement, except that this release does not compromise, waive, or prejudice any claims for unemployment compensations benefits or any claims arising from work-place injuries, including but not limited to claims for worker's compensation benefits or worker's compensation relief.

  (iv) any and all claims of slander, libel, defamation, invasion of privacy, intentional or negligent infliction of emotional distress, negligent misrepresentation, fraud, negligent hiring, supervision or retention, assault and battery, and prima facie tort; and

  (v) any and all claims for monetary recovery, including, but not limited to, back pay, front pay, liquidated, compensatory or punitive damages, attorneys' fees, experts' fees, disbursements, and costs; which, against the Second Parties, the First Parties or their heirs, executors, administrators, successors, and assigns ever had, now has, or hereafter can, will, or may have, for, upon, or by reason of any matter, cause,



or thing whatsoever from the beginning of the world to the date the First Parties execute this Agreement.

C. To file, along with Defendants, a joint motion for dismissal with prejudice and a proposed Order of Dismissal in the Civil Action, Case No. 17-60051-Civ-Zloch, pending in the United States District Court for the Southern District of Florida, by May 18, 2017 with the Court to retain jurisdiction to enforce this Agreement.

D. To agree and acknowledge that this settlement is the compromise of a disputed claim and does not constitute an admission by the Second Parties of any violation of any federal, state, or local statute or regulation, or any violation of any of First Parties' rights or of any alleged duty owed by the Second Parties to the Plaintiffs.

E. Not to disclose the terms of this Agreement to anyone except the attorney representing First Parties in this matter, First Parties' tax advisors, accountants, and/or First Parties' respective spouses, as needed to report taxes, or as compelled by force of law as more fully set forth in Paragraph 8 (a)-(c) below.

F. As part of this Agreement, First Parties will not re-apply for employment with the Defendants. First Parties agree that their agreement not to seek future employment is purely contractual and is in no way involuntary, discriminatory or retaliatory.

G. Excepting only the Civil Action, each Plaintiff represents and warrants that he has never commenced or filed, any action, charge, complaint, or other proceeding, whether administrative, judicial, legislative, or otherwise, including, but not limited to, any action or proceeding for attorneys' fees, experts' fees, disbursements, or costs, based upon or seeking relief on account of actions or failures to act by the Second Parties, which may have occurred or failed to occur before his execution of this Agreement.

H. If any government agency or court or other tribunal assumes jurisdiction of any charge, complaint, cause of action or claim covered by this Agreement against the Second Parties on behalf of or related to the Plaintiffs, each Plaintiff agrees that he will waive his right to payment of damages awarded in such case since he has agreed to the consideration set forth herein.

2. For and in consideration of this Settlement Agreement and the mutual promises contained herein, and in full, final and complete settlement, Defendants agree to pay First Parties and their counsel the gross sum of **$40,000.00, in three (3) certified cashier's checks,** divided as follows: **Griselda Perales will be paid the sum of Thirteen Thousand Dollars ($13,000.00); they will pay Fidel Lopez Juarez the sum of Thirteen Thousand Dollars ($13,000.00); and, they will pay attorneys, Bober & Bober, P.A., the sum of Fourteen Thousand Dollars ($14,000.00)** (collectively, the "Settlement Amount") for First Parties' alleged unpaid overtime compensation, liquidated damages, attorneys fees, costs and additional consideration for this Agreement, to be paid

1370347v2 997370.0001




by Defendants as follows:

the Defendants will deliver to the offices of First Parties' attorney, Peter Bober, Esq., Bober & Bober, P.A. 1930 Tyler Street, Hollywood, FL 33020, the full payment of $40,000.00 (in three (3) cashier's checks: $13,000.00 payable to "Griselda Perales"; $13,000.00 payable to "Fidel Lopez Juarez"; and, $14,000.00 payable to "Bober & Bober, P.A." by not later than **May 17, 2017**).

(i)     Counsel for Plaintiffs, Peter Bober, Esq., Bober & Bober, P.A. has agreed to hold the funds in escrow and not disburse any funds until the Court has entered an Order of Dismissal. In the event that this Agreement is not approved by this Court and the Civil Action is not dismissed with prejudice by this Court, the parties will work cooperatively to have the Court, ultimately, effectuate approval of this Settlement Agreement so the case can be dismissed with prejudice, prior to the checks being returned to counsel for Defendants. However, for whatever reason, the Court, ultimately, does not approve the Plaintiffs and the Defendants' Settlement Agreement and dismiss with Civil Action with prejudice, Counsel for Plaintiff, Peter Bober, Esq, agrees to deliver the cashier's checks tendered by Defendants to Mr. Bober pursuant to this Agreement, to counsel for Defendants, Catalina M. Avalos, Esq. at Tripp Scott, P.A. 110 S.E. 6th Street, 15th Floor, Fort Lauderdale, Florida 33301, via overnight mail, within 2 business days of receipt of the entry of the Order denying the approval of this Agreement, after a second attempt to obtain such approval.

(ii)     In consideration of the mutual promises outlined in this Agreement and to settle all claims herein, Second Parties, hereby release and forever discharge the First Parties from all, debts, sums of money, accounts, promises, damages, judgments, claims, and demands whatsoever, either in law or equity, whether statutory or common law, whether federal, state, local, or otherwise, including, but not limited to, any claims, charges, demands, complaints related to or arising out of First Parties' employment with the Second Parties, or the termination of First Parties' employment with Second Parties, from the beginning of the world through the date this Agreement becomes fully executed.

3.     First Parties agree that if it is later determined by the Internal Revenue Service that First Parties failed to pay taxes which were their obligation to pay on any wage amounts made to them under this Agreement, First Parties will indemnify and hold Second Parties harmless and assume any and all liability for any taxes, interest, or penalties assessed on such wage payments being made under this Agreement for any taxes that are or were the First Parties' legal obligations to pay, if any, but not for any amounts that are or were the Second Parties lawful obligation to pay, if any. First Parties' counsel agrees to complete and sign a W-9 form and return it to Second Parties' counsel contemporaneously with First Parties' executed copy of this Agreement.

4.     The Defendants shall issue the appropriate tax forms for the payments made hereunder. Each Plaintiff agrees and acknowledges that, between them, as allocated pursuant to applicable law, he/she will be solely responsible for the payment of any and all taxes with respect to the wage payments

1370347v2 997370.0001

made herein, but not for any amounts that are or were the Second Parties lawful obligation to pay, if any.

5. Upon First Parties' counsel's receipt of the full Settlement Amount on or before May 17, 2017, First Parties agree to file an amended complaint by May 18, 2017 omitting Angela Ruth Speros and Daniel Scarfone, JR as defendants in the Civil Action, or to file a dismissal with prejudice as to Angela Ruth Speros and Daniel Scarfone, JR by May 18, 2017, and along with Defendants, further agree to file a joint motion to approve this settlement agreement and dismiss all claims in the Civil Action no later than May 18, 2017. First Parties' and Second Parties' counsel further agree to take whatever actions are necessary to effectuate the dismissal with prejudice of the Civil Action, including, but not limited to, filing additional motions should the District Court require it.

6. The First Parties represent, warrant, and acknowledge that upon full and actual receipt of the entire Settlement Amount; the Second Parties will not owe/pay any of them any further wages, commissions, bonuses, vacation pay, or other compensation or payments of any kind or nature, other than as set forth in this Agreement. The First Parties further agree and understand that the amounts paid by or on behalf of the Second Parties pursuant to this Agreement are being paid strictly and solely for purposes of settlement and that the Second Parties expressly deny that the First Parties are entitled to receive the Alleged Compensation Amount or any part thereof.

7. The First Parties represent, warrant, and acknowledge that there are bona fide disputes between them and the Second Parties as to whether they are entitled to receive the Alleged Compensation Amount or any part thereof. Notwithstanding that the Second Parties expressly deny that the First Parties are entitled to receive the Alleged Compensation Amount or any part thereof, the First Parties represent, warrant, and agree that the amounts paid by or on behalf of the Second Parties pursuant to this Settlement Agreement represent all they will receive from the Second Parties for alleged unpaid wages, alleged liquidated damages, and costs and attorney's fees, to which the First Parties' claim or may claim entitlement as against the Second Parties, including amounts pursuant to the Fair Labor Standards Act of 1938, as amended.

8. (a) Each Plaintiff agrees, represents and warrants that he (i) will not entice, solicit, prompt, encourage or otherwise assist any other former or current employee or independent contractor of the Second Parties to bring a claim or action against the Second Parties.

(b) The Parties acknowledge that maintaining confidentiality with respect to this Agreement is of paramount importance. Accordingly, the Parties represent and warrant that they, except as pursuant to subpoena or other legal compulsion, covenant and agree that they will keep the terms and fact of this Agreement strictly confidential, and will not disclose (whether verbally, in writing, or through non-verbal means, or otherwise) any information concerning this Agreement to any person, firm, corporation, governmental agency, or other entity. First Parties agree to notify Daniel Scarfone if they are requested to testify with respect to matters contemplated by this Agreement within three (3) business days of receiving a subpoena or other form of legal compulsory

1370347v2 997370.0001

notification. This prohibition does not apply to any filing or related communication with any federal, state or local tax or revenue authority, or to communications with counsel, their respective spouses or professional tax advisor, who agree, in advance, to be similarly bound.  Upon inquiry to the Parties by any third party, other than those listed in the preceding sentence, as to anything related to the Civil Action, including but not limited to the filing or resolution of same, any response shall be strictly limited to the following verbal communication: "*The matter has been resolved and I cannot discuss it any further.*" Specifically, each Plaintiff further agrees that he will not disclose the terms of the Settlement Agreement and will not disclose any documents or records obtained from the Second Parties as part of this Civil Action.

(c)     The First Parties acknowledge and agree that the covenants set forth in Paragraphs 8 (a) through 8(b) above are a material inducement to the Second Parties to enter into this Agreement. Accordingly, and notwithstanding any other remedies that also may be available to the Second Parties, in the event of any proven violation by the First Parties or the First Parties' spouse(s) of any of the representations, warranties, agreements, or covenants contained in Paragraphs 8(a) through 8(b) above, the Defendants will be entitled to collect from the First Parties any and all proven damages resulting from or caused by such violation. Additionally, and notwithstanding any other remedies that also may be available to the Second Parties, in the event of any proven violation by the First Parties of any of the representations, warranties, agreements, or covenants contained in Paragraphs 8(a) through 8(b) above, the Second Parties will be entitled to collect from the First Parties reasonable attorney's fees and costs expended in enforcing the confidentiality provision and any proven damages resulting from the breach.

9.      The Parties acknowledge that maintaining each other's good reputation in the community is of *paramount importance* to one another. Accordingly, the parties represent and warrant that they will not disparage or encourage or induce others to disparage one another, including the Second Parties, by any type of communication, whether verbally, in writing, or otherwise. Defendants agree that if any prospective employer of any Plaintiff contacts them, they shall provide in writing a neutral employment reference, and shall be prohibited from disclosing to any known prospective employer requesting an employment reference on behalf of the respective Plaintiff that the respective Plaintiff took legal action against Second Parties or instituted a lawsuit.  Each Plaintiff should direct all requests for employment references in writing directly to Danny Scarfone, who upon being contacted by a prospective employer of a respective employer, shall provide a neutral reference (only dates of employment, positon held, and  pay rate)  as set forth in this Paragraph.

10.     No cancellation, modification, amendment, deletion, addition, or other changes in their Agreement or any provision hereof or any right herein provided shall be effective for any purpose unless specifically set forth in a subsequent written agreement signed by both First Parties and Second Parties.

11.     Should any provision of this Agreement be declared or determined by any court of competent jurisdiction to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not

1370347v2 997370.0001

FL

G.P

be affected thereby and said illegal or invalid part, term or provision shall be deemed not to be a part of the Agreement and all other valid provisions shall survive and continue to bind the parties.

12.     This Agreement may be signed in multiple counterparts, and facsimiles or copies shall have the same force and effect as an original.

13.     The law governing this Agreement shall be that of the United States and the State of Florida.

14.     This Agreement is not, and shall not in any way be construed as, an admission by the Second Parties of any liability to, or of any unlawful or otherwise wrongful acts against, the First Parties or any other person, and the Second Parties specifically disclaim any liability to, or any unlawful or otherwise wrongful acts against, the First Parties or any other person on the part of the Second Parties. This Agreement shall not be admissible or discoverable in any court or administrative proceeding other than as necessary in an action or proceeding for the express purpose of enforcing or construing this Agreement.

15.     The First Parties expressly represent, warrant, and acknowledge that the terms and provisions of this Agreement herein stated are the only consideration for signing this Agreement; that no other promise or agreement of any kind has been made by, to or with any person or entity whatsoever to cause the signing of this Agreement; and that, in executing this Agreement, he does not rely and has not relied upon any representation or statement made by the Second Parties or by any of the Second Parties' agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement or otherwise.

16.     Each Plaintiff represents and acknowledges that his signature hereon shows that he has decided, knowingly, voluntarily, freely and without coercion, after consulting with appropriate legal counsel, to execute this Agreement in return for the consideration paid by the Second Parties, and that his signature appearing hereon is genuine.

17.     Notwithstanding any other provision of this Agreement to the contrary, the Second Parties and the First Parties agree that:

(a)     By entering into this Agreement, the parties do not waive rights or claims that may arise after the date this Agreement is executed.

(b)     This Agreement does not affect the rights and responsibilities of the U.S. Equal Employment Opportunity Commission (the "EEOC") or like agencies to enforce the ADEA and other laws, and will not affect or be used to interfere with the First Parties' protected right to file a charge or participate in an investigation or proceeding conducted by the EEOC or like agencies. The First Parties further agree that they knowingly and voluntarily waive all rights or claims (that arose prior to his execution of this Agreement) that they may have against the Defendants, to receive any benefit or remedial relief (including, but not limited to, reinstatement, back pay, front pay, damages,

and attorneys' fees) as a consequence of any charge filed with the EEOC or like agencies, or of any litigation concerning any facts alleged in any such charge.

18. The First Parties and Second Parties agree that should either of them be required to enforce the material terms of this Agreement, the prevailing party in any such action or proceeding will be entitled to reasonable attorneys' fees and costs.

19. The First Parties have represented through counsel that each is under the age of 40 and as a material term of this Agreement agree to provide Defendants' counsel a signed Declaration, under penalty of perjury, where each Plaintiff confirms, represents and warrants that he/she is under 40 years old as of the date this Agreement is signed and providing their respective dates of birth.

20. **EACH PLAINTIFF EXPRESSLY REPRESENTS AND WARRANTS THAT HE/SHE:**

   (a) HAS CAREFULLY READ THIS AGREEMENT OR HAS HAD IT READ TO HIM/HER;
   (b) FULLY UNDERSTANDS THE TERMS, CONDITIONS, AND SIGNIFICANCE OF THIS AGREEMENT;
   (c) HAS HAD AMPLE TIME TO CONSIDER AND NEGOTIATE THIS AGREEMENT;
   (d) HAS HAD A FULL OPPORTUNITY TO REVIEW THIS AGREEMENT WITH HIS ATTORNEYS, BOBER & BOBER, P.A. AND HAS DONE SO; AND
   (e) HAS EXECUTED THIS AGREEMENT VOLUNTARILY, KNOWINGLY, AND WITH THE ADVICE OF HIS/HER ATTORNEYS.

DATE: 5/16/2017

GRISELDA PERALES

DATE: 5/16/2017

FIDEL LOPEZ A/K/A
FIDEL LOPEZ JUAREZ

(SIGNATURES CONTINUE ON PAGE 9)

DATE: 5/11/17

*[signature]*
DANIEL SCARFONE

DATE: 5/11/17

*Daniel Scarfone Jr*
DANIEL SCARFONE, JR.

DATE: 5/11/17

*Angela Speros*
ANGELA RUTH SPEROS

DATE: 5/11/17   Signature:   SCARFONE'S OF WILTON MANORS, INC.

BY: *[signature]*
TITLE: Pres

DATE: 5/11/17   Signature:   THE PIZZA AND PASTA FACTORY, INC. d/b/a SCARFONE'S COAL FIRED PIZZA

BY: *[signature]*
TITLE: Pres

DATE: 5/11/17   Signature:   BIG ROOSTER'S SOUTHERN TABLE, LLC

BY: *[signature]*
TITLE: Pres

1370347v2 997370.0001

May 11 17 11:04p   Danny   9547524988   p.1